IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

JAMES "JAS" PRINCE and
YOUNG EMPIRE MUSIC GROUP, LLC

     Plaintiffs,

v.

CASH MONEY RECORDS, INC.

     Defendant.

_____/

## COMPLAINT

    Plaintiffs, JAMES "JAS" PRINCE and YOUNG EMPIRE MUSIC GROUP, LLC (collectively "Plaintiffs"), by and through their undersigned counsel, hereby sue Defendant CASH MONEY RECORDS, INC., and in support thereof allege as follows:

### JURISDICTION AND VENUE

    1.    Plaintiff's claims for relief provide subject-matter jurisdiction for this Court under diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332 and because the amount in controversy exceeds the sum of Seventy-five Thousand dollars ($75,000.00), exclusive of interest and costs.

    2.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b), because Defendant is doing business in this district, as demonstrated in the document attached hereto as **Exhibit "A"** the injury therefrom is the result of Defendants' business in this district, and a substantial part of the events giving rise to the alleged claims occurred in this district.

## PARTIES

3.      Plaintiff, James "Jas" Prince ("Prince") is a resident of Houston, Texas and is the principal of Young Empire Music Group, LLC.

4.      Plaintiff, Young Empire Music Group, LLC ("Young Empire") is a limited liability company with its principal place of business in Houston, Texas.  Young Empire is an entertainment company that produces and furnishes the services of performing artists.

5.      Defendant, Cash Money Records, Inc. ("Cash Money") is a Louisiana corporation engaged in the business of marketing and distributing musical recordings, with business addresses of 1755 NE 149th Street, Miami, Florida 33181 and 555 Washington Ave., Suite 240, Miami Beach, FL 33139.  Cash Money regularly conducts business in this judicial district and oftentimes uses stationary for its official correspondence that includes the Miami, Florida addresses referenced above, as show on Exhibit "A".

## GENERAL ALLEGATIONS

6.      Aubrey Graham (p/k/a "Drake") may be the most popular hip-hop/rap artist in North America.

7.      In 2007, Plaintiffs discovered Drake and his talents before Drake had earned his worldwide notoriety.

8.      On or about December 10, 2008, with the help assistance and guidance of Plaintiffs, Drake signed an exclusive recording artist agreement with Aspire Music Group, LLC ("Aspire"), which was tasked with furnishing Drake's services to others for the purpose of creating musical recordings.

9.　　On or about June 26, 2009, Aspire entered into a memorandum of agreement with Young Money Entertainment, LLC/Cash Money, pursuant to which Aspire furnished the exclusive recording services of Drake to Young Money Entertainment, LLC/Cash Money.  (A Joint Venture of Young Money Entertainment, LLC and Defendant, Cash Money)

10.　　On or about July 9, 2009, a settlement agreement and general release was signed by multiple parties, including Aspire, whereby the parties agreed that Plaintiffs shall thereafter be paid a sum equal to twenty-two percent (22%) of Aspire's thirty-three and one-third percent (33 1/3%) share of profit advances, net profits and other advances under the Young Money Entertainment, LLC/Cash Money recording agreement.

11.　　It was later clarified, on or about July 9, 2010, that the division of income between Aspire and Plaintiffs (as written in the July 9, 2009 settlement agreement and general release) was intended to mean that of the thirty-three and one-third percent (33 1/3%) payable to Aspire, Plaintiffs receive twenty-two (22%) percent and Aspire would receive eleven and one-third percent (11 1/3%).  The Agreement stated, for example, "if Aspire was due $100,000.00, Plaintiffs would receive $66,666.00 of the $100,000.00 and Aspire would receive $33,333.00 of the $100,000.00".

12.　　The clarified understanding stated in Paragraph 11, *supra*, was further confirmed by Plaintiff's receipt of two-thirds of an advance received by Aspire from Cash Money.

13.　　The spirit of the settlement agreement and general release was that Plaintiffs would continue to receive their share of the profits (2/3 of 1/3) delivered from Drake's Recordings while Drake grew from relatively obscurity into a household name.

14.     As early as June 26, 2009, Defendant Cash Money was directly involved in providing recording services to Drake and acting on Drake's behalf in a variety of commercial activities.

15.     On or about July 18, 2009, it was reported that the unusually lucrative agreement Drake entered into that paid him a $2 million advance involved Aspire, Young Money and Cash Money.[1]  Plaintiff was not part of that Agreement.

16.     On or about August 12 and 13, 2009, Cash Money filed four (4) trademark applications in an effort to receive registered trademarks from the U.S. Patent and Trademark Office for marks affiliated with Drake, including the word marks "DRAKE" and "DRIZZY DRAKE".

17.     The July 9, 2010 clarification of the settlement agreement and general release specifically noted Cash Money's involvement with making payments related to Drake, stating that the advance payable to Aspire would be paid by Cash Money.

18.     On or about February 11, 2011, Drake's publicist acknowledged Cash Money's role with Drake, confirming that "Drake is signed to Aspire/Young Money/Cash Money and has no plans to leave."[2]

19.     Cash Money has had a continuing obligation to make payments to Plaintiffs and provide accountings related to same since the division of income between Aspire and Plaintiffs was established by the settlement agreement and general release and in the correspondence referenced herein.

---

[1] *See* "Drake: From teen TV star to rap royalty," Chris Lee, *Los Angeles Times*, at http://latimesblogs.latimes.com/music_blog/2009/07/drake-from-teen-tv-star-to-rap-royalty-.html (July 18, 2009).
[2] *See* "Drake Has No Plans to Leave Young Money, Rep Says," *XXL Magazine*, at http://www.xxlmag.com/xxl-magazine/2011/02/drake-has-no-plans-to-leave-young-money-rep-says/ (Feb. 11, 2011).

WOLFE LAW MIAMI
175 SW 7ᵀᴴ STREET, SUITE 2410
MIAMI, FLORIDA 33130

20.     On or about November 8, 2013, Cash Money sent a letter to Plaintiffs (attached hereto as **Exhibit "A"** and referenced herein as the "Wire Letter") acknowledging its' oral agreement reached with Plaintiff and its' obligation to account and pay to Plaintiff, for its' share of the profits generated from the sale of the recordings made by Drake (the "oral agreement", further stating that Cash Money shall wire One Million Dollars ($1,000,000) to Young Empire, but without providing any accounting or justification as to why the amount in the payment was the amount of money owed to Plaintiffs.

21.     Upon information and belief, Cash Money's payment to Plaintiffs on November 8, 2013 was at least $5,000,000.00 less than what was owed to Plaintiffs for Plaintiff's share of the profits.  So that they could determine if cash money now paid to Plaintiff the correct and proper share of the profits affordable to Drake's recordings.

22.     On or about November 18, 2013, Plaintiffs, through their accountant, made a request to Cash Money's counsel, Edward Grauer ("Grauer"), that Cash Money provides a list of documents needed to review Drake's United States financial statements as of July 31, 2013.

23.     On or about January 21, 2014, Grauer informed Plaintiffs' accountant that he would provide, *inter alia*: (1) Drake's sales history; (2) cumulative mechanical royalties; (3) marketing costs; (4) producer royalties/recording costs and accompanying statements; and (5) litigation cost summary, and that he would look into other charges, thereby again acknowledging and confirming Cash Money's obligation to account and pay Plaintiff its share of the Drake's profits.

24.     On behalf of Cash Money, Grauer only provided Plaintiffs' accountant with unsubstantiated marketing costs and producer royalty statements.

25.     On or about March 27, 2014, Plaintiff continues to demand that Cash Money account and pay to Plaintiff its' share of Drake's profits in response, Cash Money made another One Million Dollars ($1,000,000.00) payment to Young Empire, without providing any accounting or justification as to why the amount in the payment was the amount of money owed to Plaintiffs, again acknowledging and confirming its obligation to account and pay Plaintiff for its' share of the Drake profits.

26.     On or about March 31, 2014, and after Plaintiff's accountant made multiple attempts to communicate with Grauer and receive the promised documents, Grauer said that he was putting together the information requested for the period ending July 2013.

27.     The requested documents showing Plaintiff its' proper share of Drake's profits still not been provided to Plaintiff by Cash Money.

28.     Cash Money has continued to employ stall tactics and refuses to provide the documents necessary for Plaintiffs to determine how much money they are owed, from the sole of Drake's recordings which demonstrate gross receipts as of July 2013 of the amount $84,000,000.00.

29.     Cash Money has a continuing obligation to pay Plaintiffs related to profit advances, net profits and other advances due to Drake, and not an arbitrary amount of money whenever Cash Money, in its sole discretion, deems it to be fit.

30.     Ronald E. Sweeney ("Sweeney"), lawyer for Aspire and Young Money Entertainment, LLC, has testified that "Cash Money is a stand-alone company that is legally obligated to make payments to Plaintiff for its share of Drake's profits".

31.     According to Sweeney, Universal Musical Company (the distributor for Cash Money) takes a distribution fee from the cross sales of Drake's records, pays Cash Money, Cash Money the pays "every expense known to man and then Cash Money is supposed to pay out third parties, including Plaintiffs".

32.     Plaintiffs have not been provided adequate accounting statements to determine true expenses and monies owed, and they have not been properly paid by Cash Money in accordance with the Oral Agreement.

33.     As a direct and proximate result of Cash Money's acts complained of herein, Plaintiffs have suffered severe and irreparable harm and damage have been forced to retain the undersigned law firm and agreed to pay it a reasonable fee for its services.

34.     All prerequisites to filing suit have been satisfied, have occurred, or have been waived.

## COUNT I – UNJUST ENRICHMENT

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

35.     By means of not paying Plaintiffs its share of the profit of Drake's profits calculated as two-thirds (2/3) of any and all monies otherwise payable to Aspire (1/3 of the total profits) in connection with Drake, and instead paying Plaintiffs an underpayment in the amount of an arbitrary $2,000,000.00 (made in two separate payments of $1,000,000.00), Cash Money has been conferred a benefit upon it.

36.     Cash Money had knowledge of and has acknowledged the validity of the existing arrangement and the Oral Agreement that continues to entitle Plaintiffs to two-thirds (2/3) of any and all monies otherwise payable to Aspire (1/3 of the total profits) in connection with Drake.

37.     The circumstances of Cash Money's arbitrary and unfounded payment of $2,000,000.00 to Plaintiffs, which is a payment below the amount entitled to Plaintiffs and allows Cash Money to retain an amount in excess of what it is entitled to keep, are such that it would be inequitable and unjust for Cash Money to retain the benefit of the funds due to Plaintiffs.

**WHEREFORE**, Plaintiffs request that this Honorable Court render judgment against Cash Money by awarding damages in excess of $4,000,000, plus interest, and award such further relief as this Court may consider just.

## COUNT II - ACCOUNTING

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

38.     Based on Cash Money's Oral Agreement and acceptance of an obligation to account to make payments to Plaintiffs based on profit advances, net profits and other advances in connection with Drake, a fiduciary relationship exists between Cash Money and Plaintiffs. This obligation is confirmed in the email trail attached hereto as **Exhibit B** between Plaintiff and the CEO of Defendant.

39.     The amount of money at issue is in excess of the $1,000,000.00 paid by Cash Money to Plaintiffs pursuant to the Wire Letter and an additional $1,000,000.00 paid by Cash Money to Plaintiffs without any accounting or justification for the amount paid.  The sum of

money due to Plaintiffs is profit advances, net profits and other advances under Drake's recording agreement calculated consistent with the terms of the Oral Agreement, not an arbitrary number that Cash Money devises, without support for same.

40.     The sum of money due to Plaintiffs from Cash Money continues to accumulate and grow, and without a proper accounting, Plaintiffs are unaware of the true amount of money they are due pursuant to Oral Agreement agreements acknowledged by Cash Money.

41.     Plaintiffs do not have access to any of the secure accounting documents funds obtained by or payments made by Cash Money as a result of profit advances, net profits and other advances under Drake's recording agreement, nor the ability to properly calculate its proper share, since the books and records are within Cash Money's control, hence Plaintiff cannot determine what amounts have been improperly withheld from being disbursed to Plaintiffs.

42.     Plaintiffs are entitled to appropriate relief in the form of an accounting, so that the funds can be properly counted and delivered by Cash Money to Plaintiffs.

43.     The Court should order an immediate accounting by Cash Money as to the monies due to Plaintiffs based on profit advances, net profits and other advances under Drake's recording agreement, and in accordance with the Oral Agreement.

**WHEREFORE**, Plaintiffs request that this Honorable Court order an immediate accounting of Cash Money's revenue received concerning or related to Drake and that Cash Money must immediately provide such accounting statements to Plaintiffs for review, and award such further relief as the Court may consider just.

## COUNT III - CONVERSION

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

44.     Upon information and belief, Cash Money intentionally misappropriated more than $4,000,000 in funds belonging to Plaintiffs from the profit advances, net profits and other advances under Drake's recording agreement for Cash Money's own use.  Said funds are readily identifiable; however, Plaintiffs have not been provided any accountings to determine the specific amount of money that has been converted by Cash Money.

**WHEREFORE**, Plaintiffs request that this Honorable Court render judgment against Cash Money for compensatory damages in excess of $4,000,000, plus interest, and award such further relief as this Court may consider just.

## COUNT IV – BREACH OF FIDUCIARY DUTY

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

45.     Cash Money has unlawfully and improperly withheld payments owed to Plaintiffs.

46.     At all times relevant hereto, Cash Money owed and it continues to owe a duty of loyalty, duty of obedience and duty of disclosure to Plaintiffs as the entity responsible to make payments to Plaintiff pursuant to the Oral Agreement, understanding and acknowledgment that Plaintiffs are entitled to profit advances, net profits and other advances under Drake's recording agreement as demonstrated in the documents attached as **Exhibits A & B**.

WOLFE LAW MIAMI
175 SW 7TH STREET, SUITE 2410
MIAMI, FLORIDA 33130

47.    Cash Money has had and continues to have a duty to account for all money received related to said profit advances, net profits and other advances related to Drake, and disclose same, along with Plaintiffs' share of the profits arising therefrom, to Plaintiffs.

48.    Cash Money accepted a duty to act for and on behalf of Plaintiffs, to whom the duties of payment and accountings were owed, and not to take advantage of or injure Plaintiffs.

49.    Cash Money accepted a duty to act within the bounds of the authority and trust to collect and disseminate funds owed to Plaintiffs; a duty that was extended by Plaintiffs and confirmed by Cash Money in the documents attached hereto as **Exhibits A & B**.

50.    Cash Money had a duty to disclose all material information to Plaintiffs, including but not limited to the amounts of money owed to Plaintiffs and how it derived the amounts of money paid to Plaintiffs in the past.

51.    Cash Money has breached its fiduciary duties in violation of applicable statutory and common law by, among other things: (a) knowingly diverting funds belonging to Plaintiffs to itself and/or to others; (b) knowingly withholding information and providing incomplete information to Plaintiffs concerning the amounts Plaintiffs are due; (c) converting, wasting and/or abusing assets due to Plaintiffs; and (d) failing and refusing to account to Plaintiffs concerning the amount and extent of assets due to Plaintiffs.

52.    Cash Money has engaged in such conduct with the intent to deceive and defraud Plaintiffs.

53.    As a direct and proximate result of Cash Money's wrongful conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs request that this Honorable Court render judgment against Cash Money and award compensatory and special damages, attorneys' fees and costs, pre-judgment and post-judgment interest and such further relief as this Court deems appropriate.

## COUNT V – CONSTRUCTIVE TRUST

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

54.     This is a Count to establish and impose an equitable lien and/or constructive trust. Plaintiffs have no adequate remedy at law.

55.     The Plaintiffs' designated share of profit advances, net profits and other advances under Drake's recording agreement; belong to Plaintiffs and not in the hands of Cash Money.

56.     Based on the facts stated herein, an equitable lien and/or constructive trust should be imposed on the proceeds allocable to Plaintiffs in favor of and for the benefit of Plaintiffs.

**WHEREFORE**, Plaintiffs request that this Honorable Court: (i) impose a constructive trust and/or equitable lien on the referenced proceeds allocable to Plaintiffs pursuant to Plaintiffs' recognized share of profit advances, net profits and other advances under Drake's recording agreement, as confirmed in the Oral Agreement for the benefit of Plaintiffs; and (2) award such other and further relief as the Court deems just and proper, including attorneys' fees and costs, pre-judgment and post-judgment interest.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACTUAL AND ACKNOWLEDGE BUSINESS RELATIONSHIP

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

57.     This is a count for tortious interference with the contractual advantages business agreements related by Cash Money.

58.     At all times relevant, Plaintiff established contractual and advantages business relationships with Aspire and Young Money Entertainment, LLC, which, *inter alia*, entitled Plaintiffs to be paid a sum equal to two-thirds of Aspire's thirty-three and one-third percent (33 1/3%) share of profit advances, net profits and other advances under the Young Money Entertainment, LLC/Cash Money recording agreement.

59.     Cash Money intentionally and unjustifiably interfered with the contractual and advantages business relationships that Plaintiff's enjoy with Aspire and Young Money Entertainment, LLC by encouraging and orchestrating the removal of Aspire as an entity tasked with furnishing Drake's services to others for the purpose of creating recordings.

60.     Upon information and belief, Cash Money's intentional and unjustifiable interference with the contractual and advantages relationships between Plaintiff and Aspire and Young Money Entertainment, LLC was done, in part, to unlawfully and improperly eradicate any formal obligations to pay Plaintiffs pursuant to the settlement agreement and general release.

61.     As a result of Cash Money's tortious interference with the contractual and advantages business relationships between Plaintiffs and Aspire and Young Money Entertainment, LLC, of which Plaintiffs were intended beneficiaries, Plaintiffs have been severely damaged and irreparably harmed.

**WHEREFORE**, Plaintiffs request that this Honorable Court render judgment against Cash Money by awarding damages in excess of $75,000.00, plus interest, and such further relief as the Court may consider just.

## COUNT VII – BREACH OF ORAL CONTRACT

The Plaintiffs re-allege the jurisdictional and factual allegations of Paragraphs 1-34 and state:

62.     This a count for Breach of the Oral Agreement, paragraph 63.  Pursuant to the Oral Agreement, Defendant Cash Money agreed to account and paid to Plaintiff such sums as shall equal 2/3 of 1/3 of the total profits derived from the sale of Drake's recordings.

63.     The terms of the Oral Agreement, were confirmed in the accounts attached hereto as Exhibits A & B, partially performed by Defendant.

64.     However, Defendant has breached the terms of the Oral Agreement by fully and properly accounting and paying to Plaintiff its share of the profits derived from the Drake recordings.

65.     Plaintiff has satisfied all conditions precedent.

66.     As a direct and proximate result of Defendant's breach of the terms of the Oral Agreement, Plaintiffs have been damaged.

WHEREFORE, Plaintiff request that this Honorable Court order judgment against Cash Money, by awarding damages in excess of $75,000.00 plus interest, and for such further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a Jury Trial of all issues so triable.

August 19, 2014                                    **WOLFE LAW MIAMI, P.A.**
                                                   Attorneys for Plaintiffs
                                                   175 SW 7th Street, Suite 2410
                                                   Miami, FL 33130
                                                   Phone: 305.384.7370

WOLFE LAW MIAMI
175 SW 7TH STREET, SUITE 2410
MIAMI, FLORIDA 33130

Fax: 305.384.7371

By:

    RICHARD C. WOLFE
    Florida Bar No.: 355607
    rwolfe@wolfelawmiami.com